## · FRUEN CEREAL COMPANY v. E. J. CHENOWETH.[1]

### July 15, 1921.

### No. 22,319.

**No prejudice in excluding testimony of fact subsequently conceded.**
1. Excluding testimony to prove a fact which later in the trial was conceded, cannot be prejudicial.

**No prejudice in excluding testimony when objector's concession satisfies questioner.**
2. Nor can error be predicated upon a ruling sustaining an objection to a question, where a concession by the objector answers the question so that the party examining is seemingly satisfied.

**No showing that question objected to was material.**
3. It is not made to appear that a question asked on rebuttal was material when the objection thereto was sustained.

Action in the district court for Hennepin county to recover $1,008 damages for breach of contract in sale of carload of flour. The answer alleged that the flour was in all respects the kind and grade agreed to be delivered. The case was tried before Fish, J., and a jury which returned a verdict in favor of defendant. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*George S. Grimes,* for appellant.
*Webber, George & Owen,* for respondent.

HOLT, J.

Action to recover damages against the seller for delivering a carload of wormy flour instead of the flour alleged to have been bought and paid for. Defendant had a verdict and plaintiff appeals from the order denying a new trial.

Plaintiff's contention, as alleged in the complaint, was that it purchased the "best patent old spring wheat" flour, and defendant's that

[1]Reported in 184 N. W. 30.

the flour delivered was the kind and grade purchased by plaintiff. Plaintiff deals in flour and also operates a mill in Minneapolis. Defendant owns and runs a small flour mill in Wisconsin. A firm of brokers in Minneapolis obtained from defendant samples of the flour he grinds with a view to sell on commission. One of these samples was exhibited to plaintiff by the brokers and an order, directed to defendant, was given for two carloads of flour of 210 barrels each at $10.80 per barrel. When the first carload was received, plaintiff notified defendant that the flour was below grade and sample. Defendant came to Minneapolis and sought to adjust the deal. At that time the claim was also made that the flour was infested with worms.

The assignments of error are all upon rulings excluding testimony. The first group of questions, to which objections were sustained, relate to whether or not the carload in question was "best patent wheat flour." When the rulings were made, the order for the purchase had not been offered and it had not appeared that a letter of confirmation, written by plaintiff to defendant, containing the terms of the contract, as claimed by plaintiff, had ever been received by defendant. In fact, no order was ever offered in evidence, and defendant denied the receipt of the letter of confirmation. In that state of the evidence the court deemed it proper not to permit the questions, but to hold them in abeyance until it was seen what would develop. Afterwards defendant expressly admitted that the flour was not of the grade known as "patent" flour. So that, were it conceded that the questions were proper when asked, the subsequent admission established the fact sought to be elicited, and no prejudice resulted from the rulings.

The next question sustained was this: "Is the grade patent or best patent wheat flour a well known and recognized grade of flour in the trade?" In the discussion which followed the court stated that he saw no harm in permitting an answer, but then plaintiff's counsel said he proposed to follow the inquiry by showing that the only way one could tell whether a sample was "patent flour" or "straight flour" was by a chemical analysis. At this point defendant conceded and admitted that the flour delivered was not "patent" but "straight flour," the only grade he makes, and the plaintiff's counsel, seemingly satisfied, dismissed the witness, saying: "If that is conceded, that is all."

Plaintiff lastly complains because, on rebuttal, its manager was not allowed to testify whether a sample of the flour delivered had been submitted to a flour laboratory for examination. No argument as to the materiality of an answer to the question has been presented, and none occurs to us, for, as stated, there was then no dispute as to the grade of that flour. If intended merely as a preliminary question to lay the foundation for the testimony of the next witness called, the one who appears to have made such examination, for the purpose only of impeaching the chemical analysis made by defendant by the suggestion that the sample analyzed by defendant's witness might not have been taken from the flour in question, that purpose should have been disclosed before the ruling was made. The trial court took the purpose to be not rebuttal, but to show, as plaintiff's counsel also stated, that the flour was ground from musty wheat, a matter which plaintiff should have adduced evidence of before the defense opened.

The disputed issues in the case were clearly and concisely submitted to the jury. The remark of the learned trial court, in the early stage of the trial, that the proof indicated a sale by sample, could not have harmed plaintiff, for, when the testimony was all in, it was left to the jury entirely to determine whether or not the sale was by description also. The contention that plaintiff did not have the opportunity to prove damages on the theory of a sale by description, appears to us to be of no merit. The only witness on values and damages was plaintiff's manager who made the deal, and he testified that the price paid, $10.80 per barrel, was the fair market value of the flour he intended to buy, and that the flour delivered was worth only $6 per barrel. There was no offer to show the difference in value between the grade known as "patent" flour and that known as "straight" to which any assignment of error is directed.

The order is affirmed.